■ In the Matter of RUSTAM K. KERMANI, Petitioner, v. TOWN BOARD OF TOWN OF GUILDERLAND et al., Respondents. (Action No. 1.) In the Matter of RUSTAM K. KERMANI, Petitioner, v. TOWN BOARD OF TOWN OF GUILDERLAND et al., Respondents. (Action No. 2.) — Appeals from two judgments of the Supreme Court at Special Term, entered June 30, 1972 and February 8, 1973 in Albany County, which dismissed petitioner's applications in proceedings pursuant to CPLR article 78, to annul respondents' determinations which levied sewer assessments against premises owned by petitioner for the years 1972 and 1973. On March 12, 1969 the Town Board of the Town of Guilderland established an improvement area for the installation of a sewage system servicing a portion of the town. A financing plan was adopted at the same time to distribute the annual charges for the cost of such improvement according to the benefits conferred to the various properties. The assessment roll based thereon was thereafter affirmed by the town board on October 12, 1971. Petitioner was the owner of some 60 acres in the improvement area assessed generally for the year 1972 at $11,500, against which the town board levied a sewer assessment of $6,554.52 for 1972 based on such financial plan. The first of two article 78 proceedings which are before us on these appeals was commenced by petitioner with service on respondents on February 18, 1972. Special Term properly dismissed that petition as time-barred. Pursuant to section 239 of the Town Law, a proceeding to review such assessment must be commenced within 30 days after the assessment roll has been affirmed. Petitioner's attack is not on a jurisdictional basis, but based solely on error in the application of the financing plan used to compute the assessment. (*New York Cent. & Hudson Riv. R. R. Co.* v. *City of Yonkers*, 238 N. Y. 165; *County of Monroe* v. *City of Rochester,* 154 N. Y. 570.) We turn next to the second article 78 proceeding. On October 10, 1972 the method of financing the installation of the sewage system in such improvement area was amended at a meeting of the town board, and at the same meeting a public hearing was held by the board on the assessment roll for 1973. Such roll was prepared by utilizing the amended financial plan. After the public hearing the town board affirmed the roll. An assessment of $5,261.72 was imposed upon petitioner's land which had an assessed valuation of $15,000. Petitioner timely commenced this second article 78 proceeding to review the town board's action. Special Term has found no proof of arbitrariness or abuse of discretion in the action of respondents in fixing the particular basis of petitioner's sewer assessment for the year 1973. We do not agree.

The delegation of power to impose such assessment is found in subdivision 2 of section 202 of the Town Law which provides, in substance, that the " expense of the establishment of a sewer, sewage disposal or drainage district and of constructing a trunk sewer or drainage system therein * * * shall be borne by local assessment upon the several lots and parcels of lands which the town board shall determine and specify to be especially benefited by the improvement, and the town board shall apportion and assess upon and collect from

the several lots and parcels of land so deemed benefited, so much upon and from each as shall be in just proportion to the amount of benefit which the improvement shall confer upon the same." Subdivision 2 of section 231 provides for the financing of annual charges for the cost of such sewer installation and its maintenance. It specifically provides for annual apportionment and assessment upon the several lots and parcels of land especially benefited by the improvement in proportion to the amount of benefit which the improvement shall confer upon the same. The amended method of financing the sewer improvement adopted by the town board utilized a unit rule, as follows:

| "Type or Use of Property | Designated Units |
| --- | --- |
| " Residential | 2 units for each building lot plus 3 units for each family dwelling unit or 6 units per acre for vacant land. In areas zoned for residential use, if the density permitted by such zoning is less than 3 dwellings per acre, then the number of units charged shall be 2 units multiplied by the number of dwellings permitted per acre under such zoning. |
| " Commercial, Industrial and Business | 6 units per acre, or<br>2 units per 100 feet of frontage on street laterals, PLUS<br>3 units per business establishment, or<br>3 units per 240 gallons per day or water consumed on premises as measured by meter or other means, or<br>3 units per 1,000 square feet of floor space |

" In combination to most equitably achieve a balance charge for the various commercial, industrial and business establishments in the area in comparison to other uses and residential uses.

| " Agricultural | 5 units per farm, PLUS charges for each additional use in accordance with schedule." |

The long-established general rule in assessing the expenses of street improvements upon the property benefited is to consider the effect of such improvement upon its market value. The assessment should be made in view of that fact and without regard to the present use or the purpose of the owner in relation to future enjoyment. (*People ex rel. Howlett* v. *Mayor of City of Syracuse,* 63 N. Y. 291, 299.) " That principle makes it necessary that the assessors should take into consideration the value of the property, and it necessarily follows that they must take into consideration the question whether the property is vacant or improved, and, if improved, the extent and value of such improvements." (*Matter of Klock,* 30 App. Div. 24, 31.) The town board could properly consider the benefit a sewer improvement would be to unimproved property in the future, in the event it were subdivided for residential purposes. (*Matter of Cornell Univ.* v. *Village of Cayuga Hgts.,* 13 A D 2d 1, 4.) It is erroneous, unjust and inequitable, however, to assess a vacant lot an equal amount with an improved lot, merely because the former could possibly be developed as a residential subdivision sometime in the future. The vacant lot is not benefited to the same extent as the lot which is already built upon. As to the latter, no additional expense is necessary and the sewer

fulfills its full measure of usefulness. It is both a present and continuing future benefit to the lot. Not so with the vacant lot. (*Matter of Klock*, 30 App. Div. 24, 40.) The present record reveals that petitioner's parcel contains approximately 60 acres of undeveloped land with no improvements thereon. It is an irregularly shaped parcel of undulating terrain bordered by the New York State Thruway, containing the ravine of the Krumkill Creek, with some frontage along McKown Road and with access to Route 20 by various town roads. Its last use was agricultural, although it presently lies fallow. The petition alleges that the construction of said sewage system includes installation of the sewer mains and laterals servicing existing buildings. It is further alleged that lateral sewers are not being constructed into petitioner's parcel, nor would they be so constructed at the expense of the improvement district should the property be developed. These allegations are not denied by respondents. The record further reveals that petitioner's sewer assessment for 1973 exceeded those for certain other parcels with assessed valuations far in excess of petitioner's upon which are built a large shopping center (assessed valuation of $399,200 with a sewer assessment of $4,280.40), a five-store office building (assessed valuation of $225,000 with a sewer assessment of $2,088) and a 10-story highrise office building (assessed valuation of $254,000 with a sewer assessment of $5,052). It is obvious that either the improvements on the above properties and their values were not considered, or petitioner's unimproved parcel was assessed substantially beyond the benefits reecived. (See *Matter of Taxpayers of City of Rochester* [*Beach Ave. & Bonaldi St. Sewer*], 136 Misc. 278, affd. 236 App. Div. 882.) No reason or explanation was given for such inequality and discrimination. "Discrimination in taxation which is palpable and arbitrary amounts to a denial of the equal protection of the law." (*Matter of Long Is. R. R. Co.* v. *Hylan*, 240 N. Y. 199, 205; cf. *Matter of Cornell Univ. v. Village of Cayuga Hgts.*, 13 A D 2d 1.) The exaction of an assessment in substantial excess of the benefits received is a taking, in the guise of taxation of private property for public use, without compensation. (*Norwood* v. *Baker*, 172 U. S. 269, 279.) Petitioner is somewhat benefited by the sewer improvement and should help pay for it. His assessment for such improvement, however, is clearly confiscatory and manifestly unjust as compared with other properties in the improvement district. (*People ex rel. Empie* v. *Smith*, 166 App. Div. 406, 411, revd. on other grounds 216 N. Y. 95.) There is ample proof in the present record to demonstrate that the special assessments made and levied by respondents were not apportioned upon the parcels especially benefited by the sewer imrovement in proportion to the amount of benefit conferred upon them. In view of this, the judgment entered February 8, 1973 should be reversed and a recomputation directed as to the 1973 assessment of petitioner's parcel of land by the town board. Judgment entered June 30, 1972, affirmed, without costs; judgment entered February 8, 1973, reversed, on the law and the facts, and a recomputation directed as to the assessment on petitioner's parcel by the Town Board of the Town of Guilderland, without costs. Greenblott, Sweeney, Kane and Reynolds, JJ., concur; Herlihy, P. J., dissents and votes to affirm in the following memorandum. Herlihy, P. J. (dissenting). I concur in the opinion of Special Term. I would add, however, that while the petitioner has demonstrated apparent inequality insofar as he is paying more on his vacant 60 acres than large buildings, supermarkets and hotels, nevertheless, the classification being a category on zoning use does not appear arbitrary or without any rational foundation. While my sympathy is with the petitioner, his briefs legally do not present any sound basis for relief.