OPINION OF THE COURT
Edward F. McLaughlin, J.
Petitioner moves pursuant to section 27-116 of the Housing Code of the City of Syracuse for confirmation of an administrative order directing demolition of a building located at 900-904 South Salina Street, Syracuse. Respondents move to join the Commissioner of Finance of the City of Syracuse as a party respondent pursuant to CPLR 1003 to accord complete relief between the parties.
The above-captioned proceeding was commenced on February 1, 1979 to compel respondent, as owner of the premises, to demolish a two-story brick structure that had been damaged by fire on October 21, 1978 and has been determined by petitioner to be an immediate danger to the health, safety and *844 welfare of the public. The property, located in a distressed area of the city, was uninsured and had been vacant for several years. Taxes upon the property had not been paid since 1971, and the city, pursuant to section 22 of the Syracuse Tax Act (L 1906, ch 75, as amd by L 1958, ch 641) has annually sold the property at tax sales, bid in the property on behalf of the city, and taken tax sale certificates for the years 1971-1977.
The Syracuse Tax Act provides a right of redemption of property within two years of the tax sale. Respondent has not redeemed the property for any of the years stated, and apparently has no intention of doing so in the future. The Commissioner of Finance has not taken a tax deed to the property nor commenced foreclosure proceedings to date.
Respondent contends that the estate is no longer the owner of the premises, and that the public records should be corrected to so indicate. Respondent argues that it is the duty of the Commissioner of Finance to take a tax deed or foreclose pursuant to section 22, and that his failure to do so has put respondent in the inequitable position of being responsible for demolition costs on property to which the estate has no enforceable rights.
Section 22 of the Syracuse Tax Act provides in pertinent part: "If any such tax sale or certificate shall not have been redeemed prior to the expiration of the period of redemption the commissioner of finance, or his successor in office, shall issue to the city of Syracuse a deed or deeds for all of the lands described therein remaining unredeemed, or such commissioner, or his successor in office, shall institute proceedings in the name of the city of Syracuse to foreclose the lien of said taxes upon said real estate pursuant to the provisions of section forty-four of this act.”
Respondent contends that the language of section 22 is mandatory and requires the Commissioner of Finance to take a tax deed to delinquent unredeemed property. The use of the word "shall” in the above-quoted section is not the final and conclusive test of whether the issuance of a tax deed is mandatory or permissive. (See Munro v State of New York, 23 NY 208; Gay v Pope & Talbot, 183 Misc 162; McKinney’s Cons Laws of NY, Book 1, Statutes, § 177.) Where it is evident from the surrounding circumstances that peremptory language is not intended to receive a peremptory construction, it may be *845 construed as directory only. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 177, subd c.)
In this case, where the act provides a remedy to the city which was intended for the benefit of the city as against a defaulting taxpayer, it cannot be said that the language of the legislation is peremptory. (See Matter of Rutledge, 162 NY 31; Carpenter v Newland, 92 Misc 596.) The city should be allowed to pursue whatever remedy it deems to be in its best interest, and a landowner who has failed to pay property taxes should not be heard to complain that the city has neglected to take title to his property. It is respondent’s waiting game or "do-nothing” attitude in abandoning the premises for taxes that has caused the present situation, not the inactivity of the city in enforcing its claim.
Respondent further contends that the estate cannot be held personally liable for demolition costs by virtue of the decision of the Court of Appeals in City of Buffalo v Cargill, Inc. (44 NY2d 7) and Canino v Engelstein (43 NY2d 922). Those cases followed the court’s holding in Matter of Ueck (286 NY 1) that the acquisition of a tax sale certificate by a taxing district as the result of a tax sale held pursuant to established statutory procedures extinguishes the taxpayer’s personal liability for the unpaid taxes. The present case does not involve the constructive payment of real estate taxes by virtue of a tax sale, but rather involves liability for demolition costs necessarily incurred because of the dangerous condition of premises under the control of respondent.
In this respect, the case of City of Buffalo v Dankner (48 AD2d 572, app dsmd 38 NY2d 826) is instructive. In upholding a city’s right to pursue an action against the owner of a blighted structure to recover a personal money judgment for the cost of demolishing the building, the court noted: "There is substantial reason why the Legislature should believe that cities must be free to deal with the owners of blighted buildings in an effective manner. Especially in urban core areas, the value of the land on which a structure is demolished is often so low that restricting the demolition authority to recovery of its costs by selling it in foreclosure would be unrealistic. By the time the expenses of such a procedure are deducted from any revenues that might be realized there would, in many cases, be little left to defray the wrecking costs. While this is generally true in cities, it may not be true in less densely populated areas where land values are higher, *846 which may explain why the Town Law lacks the savings provision of the General City Law regarding existing local legislation. Moreover, the threat of personal liability in itself can serve as a formidable deterrent to property owners who merely collect insurance proceeds after a fire and abandon their building and land for the city to take over.”
Respondent’s second and third defenses, as set forth in the answer to the petition for conformation, are without merit. The determination that an emergency exists need not be made exclusively by the Commissioner of Urban Renewal, but under section 27-lll(b) of the City of Syracuse Housing Code may be made by his designated representative. Furthermore, the city is empowered to assess the cost of demolishing blighted structures directly against the owners thereof as well as against the land pursuant to section 20 (subd 35, par g) of the General City Law. (City of Buffalo v Dankner, supra.)
Accordingly, petitioner’s motion to confirm the order of demolition pursuant to section 27-116 of the Housing Code of the City of Syracuse is granted. Respondent’s motion to join the Commissioner of Finance of the City of Syracuse as a necessary party respondent is denied for the reasons stated above.